# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1) ESSEX INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-CV-247-GKF-TLW |
| | ) | |
| 1) WILLCO ENTERPRISES, LLC; | ) | |
| 2) JAY WHEELER; | ) | |
| 3) JENSICA WHEELER; | ) | |
| 4) BANK OF OKLAHOMA, N.A., | ) | |
| Chartered by the United States of America, | ) | |
| now d/b/a BOKF, NATIONAL ASSOCIATION; | ) | |
| 5) DONNIE WILLIAMSON; | ) | |
| 6) STRESSCON, INC., an Oklahoma Corporation; | ) | |
| 7) HALE PLUMBING, INC., an Oklahoma Corporation; | ) | |
| 8) CAMBRIDGE CONSTRUCTION SERVICES, LLC, an Oklahoma Limited Liability Company; | ) | |
| 9) JERRY GRIEGO CONCRETE CONSTRUCTION COMPANY, a Sole Proprietorship; | ) | |
| 10) CHAVEZ FRAMING, LLC, an Oklahoma Limited Liability Company; | ) | |
| 11) MARSHALL CUSTOM HOMES, LLC, an Oklahoma Limited Liability Company; and, | ) | |
| 12) NAUTILUS INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION & ORDER

This matter comes before the court on the plaintiff's Motion for Summary Judgment as to defendant Nautilus Insurance Company ("Nautilus"). [Dkt. #47]. Plaintiff Essex Insurance Company ("Essex") issued an insurance policy (the "Policy") providing liability insurance to defendant Cambridge Construction Services, LLC ("Cambridge") from April 10, 2009, to April

10, 2010, subject to certain limitations and endorsements. Essex seeks a declaratory judgment that, under the Policy, it had no duty to defend or indemnify Cambridge in a lawsuit tried in the District Court of Tulsa County, State of Oklahoma ("Tulsa County Suit") related to construction work done by Cambridge between September 2005 and September 2007. In the Tulsa County Suit, Jay and Jensica Wheeler alleged that Cambridge (and others) performed defective construction work on the Wheelers' property. On January 30, 2012, a jury rendered a verdict in favor of all defendants, including Cambridge. [Dkt. #53, p.2]. Nautilus argues that Essex has a duty to indemnify and defend its insured, Cambridge, in the Tulsa County Suit.[1]

## I. Summary Judgment Standard

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Federal Rule of Civil Procedure 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adler v. Wal-Mart Stores, Inc*., 144 F3d 664, 670 (10th Cir. 1998). A court must examine the factual record in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

---

[1] Nautilus properly notes that the Tulsa County Suit is not yet final, as the Wheelers may prevail on appeal.

586-87 (1986) (citations omitted).  "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.  An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler*, 144 F.3d at 670.  In essence, the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## II.  Material Facts as to Which There is No Genuine Dispute

In 2005 Cambridge began working as a subcontractor on a home being built for defendants Jay and Jensica Wheeler.  Cambridge, along with another company, participated in the house pad's dirt compaction.  Cambridge also participated in some of the pool and retaining wall dirt fill.  Cambridge's involvement with the construction ceased in approximately September 2007.  The Wheelers first began to notice problems related to the construction in 2007 and 2008.  Dr. Wheeler testified he first noticed defects in the plumbing in "January, February '08-ish." [Dkt. #51-6, p.4:16-21]. At the very latest, Cambridge became aware of the Wheelers' allegations on March 29, 2010, when Cambridge was served as a party in the Tulsa County Suit. [Dkt. #51-5, p.4].

Nautilus issued an insurance policy providing insurance to Cambridge from April 10, 2007 to April 10, 2008.  Essex provided a liability insurance policy to Cambridge which had an inception date of April 10, 2009, and terminated on April 10, 2010, subject to certain limitations and endorsements.

### III.  The Policy

"An insurance policy, like any other contract of adhesion, is liberally construed, consistent with the object sought to be accomplished, so as to give a reasonable effect to all of its provisions, if possible." *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991).  "The construction of an insurance policy should be a natural and reasonable one, fairly constructed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result." *Id.* (quoting *Wiley v. Travelers Ins. Co.*, 534 P.2d 1293, 1295 (Okla. 1974)).  The Oklahoma Supreme Court continued:

> The terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was negotiated. The interpretation of an insurance contract and whether it is ambiguous is a matter of law for the Court to determine and resolve accordingly. However, neither forced nor strained construction will be indulged, nor will any provision be taken out of context and narrowly focused upon to create and then construe an ambiguity so as to import a favorable consideration to either party than that expressed in the contract.

*Id*.

"An insurer has a duty to defend an insured whenever it ascertains the presence of facts that give rise to the potential of liability under the policy.  The insurer's defense duty is determined on the basis of information gleaned from the petition (and other pleadings), from the insured and from other sources available to the insurer at the time the defense is demanded (or tendered) rather than by the outcome of the third-party action." *First Bank of Turley v. Fidelity and Deposit Ins. Co. of Md*., 928 P.2d 298, 304 (Okla. 1996) (emphasis omitted).

The Policy includes a Combination Construction Related Endorsement ("Endorsement") which "amends the liability coverage form or coverage part . . . and applies to the entire policy." Policy, Dkt. #47-5, p.16].  The Endorsement limits liability coverage as follows:

> I. The coverage under this policy does not apply to "bodily injury," "property damage," "personal and advertising injury," or any injury, loss or damage arising out of, caused or contributed by inadequate, improper, faulty or defective construction:
>
> 1. which first occurred, began to occur, or is alleged to have occurred prior to, or is alleged to be in the process of occurring to any degree, as of the inception date of this policy; and/or
> 2. causing incremental, continuous or progressive damage arising from an occurrence which first occurred, began to occur or is alleged to have occurred prior to the inception date of this policy.

*Id*. The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at p.36.

The Endorsement clearly and unambiguously excludes coverage for the Tulsa County Suit. Cambridge performed its construction work between 2005 and 2007, and the Wheelers noted that property damage resulting from the dirt fill began to occur in 2007. At the latest, the damage to the plumbing began to occur in January or February of 2008. The damage was either "in the process of occurring to [some] degree" or was "continuous or progressive damage arising from an occurrence which first occurred" or began to occur prior to the inception date of the Policy, and therefore was not covered by the Policy. *See Id*. at p.16.

Notwithstanding the Endorsement, Cambridge argues that the Policy provides for coverage in this instance. The portion of the Policy which Cambridge relies upon reads, in relevant part:

> "SECTION I – COVERAGES
>
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 1.   Insuring Agreement
>     a. *We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.* We will

> > have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . . No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.
>
> > b. *This insurance applies to "bodily injury" and "property damage" only if:*
> >    1. . . .
> >    2. The "bodily injury" or "property damage" occurs during the policy period; and
> >    3. Prior to the policy period, no Insured . . . knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
>
> > c. *"Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured,* . . . includes any continuation, change, or resumption of that "bodily injury" or "property damage" after the end of the policy period."

[Policy, Dkt. #47-5, p.23] (italicized portions quoted by Nautilus).

Nautilus selectively quotes the italicized portions of the Policy out of context to argue that, because Cambridge allegedly first became aware of the Wheeler's claims during the policy period, Essex was therefore obligated to defend Cambridge. The italicized portions of Subsections a, b, and c, however, are three separate subsections of the Insuring Agreement, are not linked by any conjunctive language, and merely follow each other sequentially. The italicized portion of Subsection b limits bodily injury and property damage liability coverage to situations meeting all requirements set forth in Subparagraphs b(1), b(2), and b(3). The portion of Subsection b italicized by Nautilus does not affect coverage set forth in Subsection c.

The unambiguous and clear meaning of Subsection c is to provide liability coverage for "bodily injury" or "property damage" which occurs during the policy period, including any continuation, change, or resumption of those damages after the end of the policy period, *unless* Cambridge knew of that bodily injury or property damage prior to the policy period. Nowhere does Subsection c purport to expand coverage to include bodily injury or property damage which occurred prior to the policy period, but was unknown to Cambridge until the policy period began. Nautilus's construction of the Policy is prohibited by *Dodson*, because it takes parts of the Policy out of context and narrowly focuses on them so as to create an ambiguity which is not present when the Policy is read as a whole. *See* 812 P.2d at 376. Moreover, it is immaterial when Cambridge learned of the property damage, as the Combination Construction Related Endorsement excludes liability coverage regardless of any "notice and knowledge" provision in the Coverage Form.

The clear and unambiguous language of the Policy excludes coverage for the Tulsa County Suit, therefore summary judgment in favor of plaintiff Essex and against defendant Nautilus is warranted.

WHEREFORE, plaintiff's Motion for Summary Judgment as to defendant Nautilus Insurance Company [Dkt. #47] is granted. On or before August 8, 2012, counsel for plaintiff Essex and defendant Nautilus shall file a joint statement as to whether any claims remain unresolved in this lawsuit and, if not, shall submit a proposed final judgment.

IT IS SO ORDERED this 26th day of July, 2012.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT